## Case No. 17,499.

### WHEELER v. McCORMICK.

[11 Blatchf. 334; 6 Fish. Pat. Cas. 551; 4 O. G. 692.] [1]

Circuit Court, S. D. New York. Oct. 27, 1873.

REISSUE OF PATENTS — COMBINATIONS AND CONSTITUENT DEVICES—HARVESTERS.

1. The reissued letters patent Nos. 875, 877, 878 and 879, granted to Cyrenus Wheeler, Jr., January 3d, 1860, and the reissued letters patent No. 2,610, granted to said Wheeler May 14th, 1867 (the original patent on which such five reissues were founded having been granted to said Wheeler December 5th, 1854), and the reissued letters patent No. 2,632, granted to said Wheeler, May 28th, 1867 (the original patent having been granted to said Wheeler February 6th, 1855), such six reissues having been extended and being each for an "improvement in grain and grass harvesters," are valid.

2. Where a patentee has, in his original patent, patented an aggregate of several devices, he may, in obtaining a separate reissued patent for each one of such several devices, give the same identical description, in the specification of each reissue, of each and all of the devices included in the original patent.

3. If, in such case, the claim of each reissue is for a distinct and severable part of the invention described and shown in the original patent, the reissues are not open to the objection that they are several patents for the same invention.

4. Reissued letters patent No. 880, granted to said Wheeler, January 3d, 1860. founded on the said original patent of December 5th, 1854, were not extended; but, as such reissue claimed only a distinct and separate device, not included in the other reissues of the same date, the fact that such device became public property, gives no right to use the devices claimed in the reissues which were extended, although the specifications are alike in their descriptive parts, it appearing that the use of the latter devices does not necessarily involve the use of the device claimed in reissue No. 880.

[Cited in brief in Thompson v. Barry, Case No. 13,942. Cited in Boomer v. United Power-Press Co., Id. 1,638.]

[2] [Final hearing on pleadings and proofs.

[Suit brought on reissued letters patent Nos. 875, 877, 878, 879, 2,610, and 2,632, granted Cyrenus Wheeler, Jr., for "improvement in grain and grass harvesters." The facts in relation to these patents, their history, the specifications of the original and of the reissues, with the claims of the reissues, the drawings of the original and the reissues, as well as of several machines alleged by defendant to antedate the patents, are given in full in the statement of the case of Wheeler v. Clipper Mower & Reaper Co. [Case No. 17,493], to which we refer. The question of great importance, not involved in the prior case, "When several reissues are taken for a common original, the reissues having specifications substantially alike, but distinct and separate claims, what effect does the expiration of one of the group have upon the oth-

ers that are extended?" is fully discussed in the present opinion.] [2]

George Harding, for plaintiff.

Charles F. Blake and Henry Baldwin, Jr., for defendant.

WOODRUFF, Circuit Judge. On the 5th of December, 1854, the complainant, Cyrenus Wheeler, Jr., received from the United States a patent for an "improvement in grass and grain harvesters," for which he had made application March 16th, 1854. On the 7th of November, 1859, he surrendered this patent, for the purpose of obtaining reissues thereof in divisions, and, on the 3d of January, 1860, the patent was reissued in seven divisions, numbered 875, 876, 877, 878, 879, 880, and 881. Of these the reissue numbered 876 was surrendered on the 6th of April, 1867, and, on the 14th of May thereafter, was again reissued, numbered 2,610. On the 6th of February, 1855, another patent was granted to the complainant, for an "improvement in grain and grass harvesters," which was afterwards surrendered and reissued June 5th, 1860, and again surrendered, and, on the 28th of May, 1867, again reissued, numbered 2,632. For the alleged infringements of the reissued patents numbered 875, 877, 878, 879, 2,610, and 2,632, this suit is brought, the same having been extended.

The answer sets up probably as many grounds of defence as the ingenuity of counsel could suggest. It denies that the complainant invented the devices originally patented, and denies that a machine constructed in accordance with his patents is a practicable machine, or has any useful or patentable quality. It denies the validity of the several reissues, on various grounds, avers that other parties were at the time interested in the patents, and that the complainant surrendered them, and obtained reissues, without their authority, consent or concurrence, and alleges that the reissues were obtained without any legal or justifiable grounds therefor; that they embrace devices not shown in the original patent, specifications, drawings, or models, and which were not of the complainant's invention; that some of the reissues are for the same devices patented in others; and that one of the reissues has expired, without extension, which included all the distinctive peculiarities shown in the original patent. It objects, that other persons are jointly interested with the complainant in the patents, and that the suit is defective for want of the presence of such persons as parties. It denies the validity of the extension of the patents beyond the term for which they were originally granted. It avers the commencement of a suit in Illinois by the complainant against the defendant and another, for infringing the same patents, on the 8th of May, 1869, which is still pending. It denies infringement by the defendant at any time

[1] [Reported by Hon. Samuel Blatchford, District Judge. and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 11 Blatchf. 334, and the statement is from 6 Fish. Pat. Cas. 551.]

[2] [From 6 Fish. Pat. Cas. 551.]

[2] [From 6 Fish. Pat. Cas. 551.]

since January 2d, 1860, or that he has made or sold within the Southern District of New York any infringing machines. The defendant has, moreover, interposed a supplemental answer, setting up, as a partial defence, that, since this suit was commenced, to wit, on the 3d of July, the complainant, Wheeler, sold, assigned, transferred and set over to Cornelius Aultman all the right, title, and interest he, the said Wheeler, then had in the several letters patent and patent interests in the bill of complaint mentioned, and therein set forth as the property of the said Wheeler. This assignment and transfer the defendant relies upon as a partial defence, that is to say, as a bar to any decree for an accounting to or with the complainant for any profits arising from infringements committed after the date of the said assignment, and as a bar to the granting of any injunction herein upon the prayer of this complainant. Possibly, in the defendant's answer, some other grounds of defence were suggested, but not all of the supposed defences were insisted upon on the hearing.

1. The objection founded upon want of necessary parties rests upon two agreements, one of which goes, as is claimed, to the right of the complainant to maintain this suit without joining other parties. That agreement was entered into by the complainant, Wheeler, and others, of the first part, and Cornelius Aultman and others, of the second part, on the 27th of December, 1860, to continue in force for ten years. It is the same agreement that was urged as a defence, as against Aultman, in the suit of Aultman v. Holley [Case No. 656]. [3] [It is called in that suit and in this the "consolidation contract." In deciding the case of Aultman v. Holley [supra] at this present term, I have considered the same objection which is now urged here, and held that that agreement did not disable Aultman to maintain a suit in his own name, upon his patents included within the scope of that agreement. The same reasons apply to the present complainant, and my opinion in that case on this point must be taken as my opinion in this, and may, if either party so desires, be inserted in this place, mutatis mutandis, as part of this opinion. The other agreement was entered into by and between Wheeler, the complainant, and Henry Morgan, Allen, Mosher, and others, on the 25th of October, 1859. It recites that he had theretofore entered into certain agreements with the others, relating to his patents for harvesters, and in it he agrees to obtain a reissue of his patents, and that upon obtaining such reissue he will execute to such several other parties assignments to convey to them undivided shares or interests in all said patents now held by him, and all reissues and renewals and extensions of the same: to the said Morgan, one-fourth; to other of the persons named, one-fifth; to oth-

ers, eighteen one-hundredths; and to another, seventeen one-hundredths; so that the said several parties shall become joint owners thereof (certain specified states excepted); that the income derived from the excepted states shall be divided in like proportions. Among other numerous detailed provisions showing the considerations moving between the parties, is one that Wheeler and Morgan, when the reissues have been obtained and the deeds of assignment are executed, are authorized to make sales of territorial rights, give licenses, to prosecute for infringements, compromise and settle claims for infringements, &c., they to render accounts, &c., to the others, and pay to the several others their proportionate share. By a supplement another firm was admitted to share, with one of the firms who were included in the agreement, certain of the advantages secured thereby.

[The defendant, in his allegation of defect of parties, names a part only of the persons with whom his agreement was made, and on recurring to the consolidation contract it appears that he has only named those who were parties to that contract also. This makes it quite apparent that the objection in the answer refers only to the consolidation contract, and has no reference to the agreement of October, 1859; nevertheless, I cannot say that an objection in the answer that Morgan and Mosher and some others specified are necessary parties does not warrant the production of this agreement of October, 1859, and any claim in respect to the specified persons which that agreement will sustain. It cannot be denied that that agreement made them equitable joint owners of the patents now in question with the complainant Wheeler. When the reissues were obtained it was the plain duty of Wheeler to make and deliver to the others such assignments as the agreement provided for, and such as would have invested them with the legal title jointly with himself; until then Wheeler might have sued at law upon his legal title for the joint benefit. In equity, their title was (in the absence of any proof of a release, reassignment, or of a rescission of the agreement) as clear as his was at law. To this extent equity would regard that as done which ought to be done, and in equity their equitable title and immediate right to share the proceeds of a recovery made them necessary parties to a suit to recover for and to restrain infringements, if that objection is raised. True, the complainant testifies that this agreement, "as far as the transfer of interest in the patents, as called for in that writing, was never acted upon." This is not sufficient to avoid the effect of the agreement; it does not show that any change was made in the relations of the parties to the reissued patents. Their equitable titles in the shares, severally stipulated to each, became vested upon the procurement of the reissues, subject only to an accounting with certain of the parties mentioned. To vest the legal title it was

[3] [From 4 O. G. 692.]

necessary that the agreement should be "acted upon," but the parties, without action, could suffer Wheeler to retain the legal title and rest on their equitable rights. Proof that the agreement, in so far as it called for a transfer of the legal title, was not acted upon, does not show that it was in any manner defeated, or that it was rescinded, or that anything occurred to interfere with or interrupt its full force and effect in equity; while, on the other hand, the express admission by the complainant, in his testimony, that other writings were executed, not followed by showing what those writings were, leaves the defendant at liberty to insist upon the full force of his objection, and to presume that, had the complainant produced those writings, the equitable title of those absent parties would not be less clear. It is, however, proved that on the 8th and 9th of July, 1868, releases were executed to the complainant by Morgan, Mosher, and certain other persons, who, by express stipulation herein, are admitted to have then been the owners of all the interest of the parties to the said agreement in question, excepting, of course, Wheeler himself. By these so-called releases the parties sell and relinquish to the complainant, his heirs and assigns, any and all the right, title, and interest, which the parties thereto can or may have, or claim either in law or in equity, in or to said patents, and any reissue or extension of the same by reason of any agreement, contract, or understanding previously had with them or those whom they represent; to be had and held by the said Wheeler and his legal representatives to the full end of the term for which said letters patent are or may be granted. This operated to vest in Wheeler the equitable as well as the legal title. In respect to subsequent infringements, his right to sue in equity as well as at law was unembarrassed. This, however, leaves to the defendant a partial defence to this suit, which was commenced on or about the 30th of June, 1870. As to infringements and profits from infringements accrued prior to those last-named releases, the objection remains, and on that ground the defendant now insists that if the defendant be decreed herein to account, such accounting shall not go back to an earlier date than July 8, 1868. The complainant urges that this release of the equitable interest in the letters patent carries with it their interest in then existing claims for infringement. I think not; no such intention is expressed; the words used have no such import nor implication. These releases, in that respect, are not unlike the instrument which, pending this suit, the complainant has executed to Cornelius Aultman, and which the defendant has set up in his supplemental answer. The only difference is that the former transfer the equitable title, and the latter both the legal and equitable title. If the latter were construed to embrace all claims to antecedent profits arising from infringements, it might be claimed to defeat the suit alto-

gether. I must, therefore, hold the objection, for want of parties, valid to this extent—viz., that the complainant, if entitled to a decree, notwithstanding other alleged defences, cannot require the defendant to account in this suit for profits arising and accruing from infringements prior to July 8, 1868.] [3]

2. Upon the merits, I shall not attempt to go into all the details of the arguments most minutely and very ably addressed to this case by the respective counsel. In one form or another, they have, nearly all of them, on a like question, been under consideration in other cases heard and decided in this court between other parties. See Wheeler v. Clipper Co. [Case No. 17,493]; Aultman v. Holley [Id. 656]. The patentable nature of the invention described in and secured by the original patents granted to Wheeler, December 5th, 1854, and February 6th, 1855, and the practicability of the devices patented, and their utility, I deem unquestionable. The contrary, though set up in the defendant's answer, is not insisted upon by his counsel. That the reissues here in question are not invalid on the ground that they include devices not shown, described or indicated in the original patents, their specifications, drawings, or model, has also been heretofore held, and I find no reason to change my opinion on that point. Though alleged in the answer, no ground is shown for holding the extension of the patents invalid or void. The pendency of a suit in Illinois against the defendant and Leander J. McCormick, set up in the answer, is no bar to this suit, whatever operation, if any, a recovery here may have upon a final recovery there.

3. The invalidity of the reissues in question is most strenuously urged by the counsel for the defendant, on the ground, that they are several patents for the same alleged invention, and not several patents for distinct and severable parts of the invention described and shown in the original patent. This is most elaborately and ably argued. I do not understand that the counsel for the complainant contests the legal principles urged in support of this branch of the defence. The contest is, rather, whether there is any foundation of fact upon which it rests; whether, according to a just construction of the several reissues, they are not, in fact, for severable parts of the aggregate invention included in the original patent. I think the arguments of the defendant's counsel have not sufficiently kept in view this idea—Where a patentee, having patented an aggregate of several devices, is permitted to surrender his patent and receive new letters patent for the several devices included in it, it does not follow that his new specifications may not be identical in their description of each and all of the devices included in the original aggregate patent. It is the patentee's selecting out of these devices some or one, being separable and capable of use as a

---

[3] [From 4 O. G. 692.]

distinct device or devices, and making that or those the subject of his specific claim, that determines what is covered by each reissue. The description of an entire machine may be convenient, and sometimes necessary, in order to show the adaptation of the separated device to a useful purpose, and illustrate, not its construction alone, but its application, in one practicable mode, to the purpose for which it was designed. Such a description may be given, but that does not make the patent cover all that is included in the description.

In this case, then, it was competent for the patentee to amend his original specification, so as fully and minutely to describe all that was shown in the original, or in its drawings or model, and receive patents for each separate device shown therein, or each separate and severable combination of devices, capable of distinct use, and, while such specification might be annexed, in totidem verbis, to each reissued patent, define and claim, in each, such separable and distinct part of his original aggregate invention, the specification in each case showing, as it should, the construction of each separate patented device or combination of devices, so as to give the required information to the public, and illustrating the application of each device or combination to actual use, in the construction of an aggregate machine. This does not make one reissue include all that is described in the specification. All that is inclued in a specification is not necessarily included in the patent. What is claimed in and secured by the patent is secured not only when used in the mode illustrated, by the description of other devices with which it may be used, in the specification. but it is secured against its use in connection with other devices of an entirely distinct character.

For example, in reissue numbered 2,610, the patentee claims. in combination with a harvester frame that is free to vibrate about a gear centre, a laterally projecting finger-bar, so hinged to one end or corner of said frame, as to permit the finger-bar at each end to follow the undulations of the ground over which it is drawn. This claim, read in connection with the specification, refers to and is confined to a special class of harvesting and mowing machines, viz., those in which the rise and fall of the finger-bar is effected by a vibration of the frame of the machine around the gear centre, and the hinging of the finger-bar to one end or corner of that frame, so that it may rise and fall with it. It is the use of a laterally projecting finger-bar in connection with such a frame, and hinged thereto. and. also, hinged so as to permit the rise and fall of either end. which is the subject of this patent. In comparison with this. take either of the claims. say the first, in reissue numbered 875—"in combination with the hinged-bar H and the finger-bar. the intermediate shoe M, hinged to said

bar H. substantialy in the manner and for the purpose set forth." Here is a limited claim to the shoe, confined to its connection with the oscillating bar H and the finger-bar, in the manner pointed out in the specification. It is clear, that the claim in number 2,610 might be infringed without the employment of this specific combination, and it is equally clear, that the claim last above recited would not be infringed by the use of the shoe M in any other manner or combination than with the oscillating bar H, mentioned therein. It is true, that the devices specified in each claim may be so used as to infringe both, but one may be used, and may infringe one of the claims, and not infringe the other. As already suggested, the fact that the specification in each patent describes the whole, is not material. That is illustrated where there is but one patent, and, of course, but one specification; and yet the patentee, by his several claims, separates the devices, and. as may lawfully be done, claims the whole as an aggregate, and each separately.

A like comparison, instituted in reference to the other several claims in these reissues, leads to the same conclusion. In some, the several and separate character of the devices is more plainly apparent than in others, but I think they are none of them liable to the objection that the con plainant has taken more than one patent for the same device or combination. In a certain sense, it may be said that a patent for a combination of several new devices includes them all, but this does not forbid the patentee from claiming the combination, and also claiming the several devices which enter into it. if he be the inventor of each, and they are useful by themselves or in other combinations. It is not to my mind very clear that the complainant might not have secured all to which he was entitled, by reissuing his original patents, and claiming separately therein each device or combination of devices which he has claimed under several reissues. But the law permits him to divide his patent, and I find no sufficient ground for pronouncing the reissues invalid.

4. A ground of defence depending substantially upon the point last considered, arises out of the fact alleged in the answer, that reissue number 880, which was founded upon the original patent of December 5th, 1854. has not been extended. The term of the original patent. and, of course. the term of this reissue, expired December 5th, 1868; whereupon, it is claimed. that. inasmuch as the invention patented by that reissue became. on the expiration of the term, public property, and the defendant. therefore. became entitled to use it—First, that the defendant is not liable for any infringement since that time, by the use of anything included in that patent: and. second. that that reissue does, in fact. embrace within it the devices included in the other reissues, and so the defendant is

not liable at all. or, if at all, he is not liable unless it be for infringements prior to that date. In the first place, the defendant is not sued for violating any rights secured to the complainant by the reissued patent number 880. In the next place, the whole proposition fails, if reissue number 880 embraces only a distinct and separate device, not included in the other reissues, so as to be free from the objection already considered. I will not inquire whether that reissue was invalid, either as not embracing a patentable invention, or because the device which was the special subject of that patent was not new, or not the invention of the patentee. Nor will it be necessary to inquire whether the complainant is at liberty to allege the invalidity of that patent on any ground, in order to avoid the conclusion sought to be drawn from the expiration of its term. I am of opinion that nothing fell into the public domain, on the expiration of that patent, except the special device claimed in it, and that that patent did not include the devices embraced in the other reissues upon which this suit is brought.

Bearing in mind that a patent includes no more than the patentee claims therein, it will be seen, that, although, as in other reissues, the specification gives a full description of the device and of other devices which illustrate its application to use, the claim thereupon is, "the use of two hinges, substantially as described, whereby the finger-beam may be folded to the main frame, in the manner substantially as set forth." Waiving, as before, the question of the validity of this patent, it is manifest, that the devices claimed in the other reissues do not necessarily permit such folding of the finger-beam to the frame. They, or some of them, provide for the rise and fall of the finger-beam at either or both ends, and for its oscillation, so as to elevate or depress the points of the fingers, but neither of them describe a construction or use adapted to this folding of the finger-bar sidewise against the frame. That is only described and provided for in the specification of this reissue No. 880, and it is doubtful, at least, whether the machine. as described and shown in the original patent, had any such capacity. Be that as it may, the special feature, not included in the other reissues, and in no wise essential to the operation of the devices which are therein patented, is pointed out in the specification of reissue No. 880, and it is the special location of the hinge by which the shoe or socket piece is hinged to the oscillating bar. The device consists in so extending the place of that hinge sidewise towards the inner or grain side of the machine, as that it may clear the frame, when turned or folded. All the other functions of the oscillating bar mentioned in the other reissues might be effective, and the finger-bar might rise and fall at either or both ends, in actual use for mowing, and, so far as desired, in reaping, without this capacity of folding to the side of the main frame. This special location sidewise of the frame, admitting of such folding, is the specific device covered or sought to be covered by this reissue, and, whether such mere location involved any patentable quality or not, it does not, in itself, so include the other devices, that the termination of the exclusive right to employ the specific location involves, also, the right to use the other devices. Such location, if patentable, might be suggested by a third person, not the inventor of the other devices. If he had the right to use such other devices he might employ them in his new location. If not, his patent would be of no value, it being merely an added improvement to what was patented to another. In short, the devices included in the other reissues do not necessarily include this capacity to fold the finger-bar against the side of the frame, and the special right to extend the location of the hinge inward, so as to clear the frame, and so permit or enable the finger-bar to be thus folded, may, as an improvement, be vested in another inventor, who, nevertheless, cannot use it on a machine constructed within the other patented devices, without infringing the patents therefor. Such a location of the hinges, whereby the hinged finger-bar may be folded to the side of the frame, may be applied to machines not involving the use of the other patented devices, and the right to use such a location may have become free to the public, and yet without involving the right to use such other devices. For general illustration, suppose separate patents for several devices, all of which are useful in constructing an aggregate machine. The expiration of one of the patents makes the specific device therein patented public property. But, while that will warrant the use of that device in any other connection, it will not warrant a use thereof in connection with the other patented devices, unless any use thereof necessarily involved the use of such devices; nor even then, except upon the ground that there is one patentee of both or all, who, in giving the use of one to the public. necessarily gives all that is essentially necessary to make that use available. Not only so. a device may be patentable and may become public property, either by expiration of a patent or by abandonment to the public, which is useful and valuable, which. nevertheless, cannot be used except in connection or combination with other patented devices. In such cases, it cannot be used save by permission of the patentee of such other devices. whether he be the former patentee of such first named device or a third person. This exhibits the condition of the device patented in the reissue No. 880, even if it were conceded that it could not be used otherwise than in connection or combination with devices included in the other reissues, while, if it is susceptible of use in connection with other modes of hinging the cutter-bar. which would not include the devices claimed in such reissues. the result more conclusively follows, that the expiration of

that patent forms no justification for infringing the other reissued and extended patents.

5. The question of the novelty of the invention claimed by the complainant, and whether he was the first inventor, was very elaborately discussed in this court by the counsel defending the case of Wheeler v. Clipper Co. [Case No. 17,493], upon the same proofs which are presented in this, bearing on those questions. The influence of the same prior patents, applications for patents, inventions, attempted inventions, experiments, and failures, upon the inventions of others, was discussed in that case, and also in the case of Aultman v. Holley [Id. 656], and to some extent also, in Kirby v. Dodge & Stevenson Co. [Id. 7,838]. Those questions have again been most elaborately reviewed on some alleged new aspects of the questions considered, and I have endeavored to give to the views of counsel not only a patient, but a careful attention, and I am constrained to the same conclusion, in this case, as is stated in the former cases, and what is stated on the subject, without a discussion of each patent, invention, and experiment in detail, in Wheeler v. Clipper Co., and Aultman v. Holley [supra], must be taken as my opinion in this case.

6. As to infringement by the defendant, the resistance of the charge depends very largely upon an impeachment of the complainant's title as inventor of the several devices employed by the defendant. So far as the denial of any infringement of the complainant's exclusive rights depends upon that impeachment, what has already above been said sufficiently overrules it. In relation to the specific claims infringed, much that was said in the Clipper Case, is applicable to the defendant's machine. The infringement seems to me very clear. It includes, and, in substance, uses the devices embraced in the third and fourth claims of reissue number 875, and, probably, at least one other, but only the infringement of the third and fourth was urged by the counsel for the complainant; also, what is embraced in the claims in reissue number 877, the claims in reissues numbers 878, 879, and 2,610, and the first, fourth, fifth, sixth, and eighth claims in reissue number 2,632. The testimony of the expert, Mr. Renwick, is full and explicit, that the defendant's machine contains all these devices or combinations. My conclusion upon all the proofs is in conformity with his testimony to that effect. The witness also testifies, that the defendant's machine contains also substantially the same combination described in reissue number 2,632, and referred to in the third claim thereof; but, as the counsel for the complainant, in his printed argument submitted, expressly states that the claims in this patent, alleged to be infringed, are the first, fourth, fifth, sixth, and eighth, I confine the decision to those claims.

Without further detailed discussion of the numerous points and arguments most ably presented by the counsel in this case, I must content myself with saying, that, after a laborious examination of the case, I am of opinion that the complainant is entitled to a decree in conformity with the foregoing opinion, declaring the infringement and directing an account of profits, but, for reasons above stated, that account must begin with the 8th of July, 1868, and, inasmuch as the complainant has, since the filing of the bill in this case, and on the 3d of July, 1872, assigned and transferred all his right, title, and interest in these patents to Cornelius Aultman, as alleged in the defendant's supplemental answer, the account must terminate with the last-named date, after which the complainant has no interest in the profits of the defendant's infringement, and no interest to be protected by injunction. The usual reference will be made to take such account, and the amount reported must be decreed to the complainant, with costs.

[For another case involving this patent, see note to Wheeler v. Clipper Mower & Reaper Co., Case No. 17,493.]