## Case No. 13,043.

SMITH v. ELY et al.

[5 McLean, 76;[1] 1 Fish. Pat. Rep. 339.]

Circuit Court, D. Ohio. Nov. Term, 1849.

PATENTS—DURATION OF GRANT—FOREIGN PATENT —ACT OF 1836—PLEADING—PLEA IN BAR—OYER OF LETTERS PATENT — PATENTABILITY — PRINCIPLE—APPLICATION OF MOTIVE POWER.

1. By the patent act of 1836 [5 Stat. 117], if a person claim a patent for an invention for which he had obtained a foreign patent, his domestic patent must be limited to fourteen years from the date or publication of his foreign patent.

2. If, under such circumstances, a domestic patent purports to give the exclusive right of fourteen years from its date, the patent is void.
[Cited in Canan v. Pound Manuf'g Co., 23 Fed. 186; Consolidated Roller-Mill Co. v. Coombs, 39 Fed. 38.]

3. The officers of the government have no power to grant an exclusive right, except in conformity with the law. They are the mere instruments of the law.

4. A plea in bar must show that the plaintiff has no right to recover.

5. If the facts of the plea may be admitted, and yet the action may be maintained, the plea is bad on demurrer.

6. Oyer is not demandable of letters patent.

7. A principle cannot be patented.

8. An exclusive right to a motive power of electricity or steam, can only be secured by the instrumentality of mechanical inventions or combinations which produce a certain effect.

[Action on the case by Francis O. J. Smith against Heman B. Ely and others. Demurrer to defendants' pleas. Suit brought on letters patent [No. 1,647] for the electro magnetic telegraph, granted to Samuel F. B. Morse, June 20, 1840, reissued January 13, 1848 [No. 117]; also on letters patent for new and useful improvement in electro magnetic telegraph, granted to said Morse, April 11, 1846. The alleged infringement consisted in making and using said inventions upon and over the magnetic telegraph route from Pittsburgh, in Pennsylvania, to Cleveland, in Ohio, the plaintiff being the grantee of the exclusive right to make for and use upon said route the said inventions. The facts of the case, and the points raised by the pleadings, are fully set forth in the opinion of the court.][2]

Andrews & Swan, for plaintiff.
Chase & Gholson, for defendants.

BY THE COURT. (The following opinion was prepared by McLEAN, Circuit Justice, but not delivered, as the parties agreed to certify certain points to the supreme court, embracing the principal matters in controversy; but, as the opinion is on several questions arising under the patent law, it is published.)

This action is brought by the plaintiff, who claims the exclusive right to construct a telegraphic line between Wheeling, in the state of Virginia, and the city of Cincinnati, as assignee of Morse's patent, on the plan of his electro magnetic telegraph, against the defendants, who are charged with having infringed said patent, by establishing a similar line on the same route. The defendants filed eighteen pleas, to several of which the plaintiff has demurred, which brings before the court questions of law that are now to be considered. The sixth plea alleges, "that before the supposed grant of the said original letters patent, in the first count mentioned, to-wit, on the 18th day of August, 1838, the said Samuel B. Morse took out and received letters patent for the same invention and discovery in the said count mentioned, in a foreign country, to-wit, in the kingdom of France, and from the then king of the French; and said defendants aver that the said letters patent, in said count mentioned, are not limited to the term of fourteen years

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [From 1 Fish. Pat. Rep. 339.]

from the date or publication of said foreign letters patent." To this plea the plaintiff filed a demurrer, which admits that the patent bears date at the time of its emanation, without reference to the foreign patent. The seventh plea is substantially the same as the sixth, to which there is also a demurrer. By the 8th section of article 1 of the constitution of the United States, power is given to congress "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." The act of 10th April, 1790 [1 Stat. 109], which was the first law passed by congress on the subject of patents, authorized a patent to be issued for a useful invention, for any term not exceeding fourteen years. The same limitation is imposed in the acts of 1793 [Id. 318] and 1836 [supra]. The 8th section of the act of 1836 provides, that nothing contained in it "shall be construed to deprive an original and true inventor of the right to a patent for his invention, by reason of his having previously taken out letters patent therefor in a foreign country, and the same having been published at any time within six months next preceding the filing of his specification and drawings." This limits the right of application by a foreign patentee, to six months from the date of his foreign patent. But this limitation was repealed by the 6th section of the act of 1839, which provides, "that no person shall be debarred from receiving a patent for any invention or discovery, as provided in the act of 1836, by reason of the same having been patented in a foreign country more than six months prior to his application: provided, that the same shall not have been introduced into public and common use in the United States, prior to the application for such patent: and provided also, that in all cases, every such patent shall be limited to the term of fourteen years from the date or publication of such foreign letters patent."

The pleading admits that Morse's patent in this country, was dated at the time it was granted, for the term of fourteen years, although the foreign patent, for the same invention, had been obtained by him some time before; and this raises the question, whether the patent is valid for fourteen years from its date, or from "the date or publication" of the foreign patent. It is not pretended that the patent is good beyond the latter limitation; although upon its face it purports to grant an exclusive right for a longer period. It is insisted that a grant for a larger estate than the grantor possesses, is good for any lesser interest which he may have. This is true; but is such a case analogous to the one under consideration? The government has no power to grant, and can convey no right, except in the mode authorized by the law. It is the mere instrument of the law, and can exercise no discretion where the law has defined its power. The constitution authorizes

congress to grant an exclusive right to the inventor for a limited term. And that term is limited in all the acts of congress, to a time not exceeding fourteen years. Morse's patent purports to give the exclusive right for fourteen years from its date; but the law limits it to fourteen years from the date or publication of his foreign patent. It is, therefore, a patent issued, not only without the authority of law, but in violation of it. As the law limits an exclusive right to fourteen years, it is argued that no limitation is necessary on the face of the patent. If this were admitted, it would not aid the patent under which the plaintiff claims. It contains a limitation which extends the exclusive right beyond the act of congress. And if this may be done in one case, it may be done in all cases. There are no circumstances which should exempt a foreign patentee from the limitation imposed by law. On the contrary, there are stronger reasons why he should be strictly limited, than any other person. The fact of his having obtained a foreign patent may not be known in this country, unless disclosed by him; and it is his duty to see that his patent here shall not exceed fourteen years from the date or publication of his foreign patent. Any concealment on his part, in this respect, however innocently done, counteracts the law, and is a fraud upon it.

By an examination of the records of the patent office, any one may correct the date of a domestic patent; but this cannot be done in regard to a foreign patent, without a trouble and an expense which the law does not impose. If patents which give an exclusive right beyond the limitation of law be considered valid for any purpose, the policy of the law is subverted, and numberless frauds may be practiced upon the public. Every act which regulates this right requires the applicant to state his claim in terms so clear and specific as not to mislead the public; and if there be any concealment, from which a fraudulent intent may be inferred, the patent is void. And it is also void, where the specifications do not describe the invention, so as to enable any person of skill to make the thing invented. The limitation of the exclusive right, is a material part of the patent, and it must be truly stated. And if this is not done, where a foreign patent for the same thing, of prior date, has been taken out, the neglect is not chargeable upon the officers of the government, but upon the patentee, for not representing his right truly. The demurrers to the sixth and seventh pleas must be overruled.

In taking this view of a patent for an invention so creditable to the country, and which, if original, renders so illustrious one of our citizens, we are relieved by the consideration that the error is not fatal to the right of the patentee, but may be corrected by an application to the patent office.

As the publication of this opinion has been

delayed some years, and the above point having been ruled by the supreme court differently from the above view, I take occasion here to say, that the reasons assigned in that opinion have not shaken my convictions as above stated. I yield to the authority, because it has been so decided by the court, but it fails to convince my judgment.

It is true, the application by Morse for a patent in this country was made before he obtained his French patent, but the application referred to was not in the pleading, and was rather with the view to save his right, than for any other purpose. At that time his discovery was imperfect, and if secured would have been of no advantage to him. Subsequent discoveries were made, and three or four patents were issued, assigning in each re-issue, that by reason of an imperfect description of the invention, the previous patent was void. The application was made, it is presumed, under the 8th section of the patent law of 1836, which provides that "whenever the applicant shall request it, the patent shall take date from the time of filing the specification and drawings, not, however, exceeding six months prior to the actual issuing of the patent; and on like request, and the payment of the duty herein required, by any applicant, his specification and drawings shall be filed in the secret archives of the office, until he shall furnish the model and the patent be issued, not exceeding the term of one year, the applicant being entitled to notice of interfering applications." But the corrected patent or specifications last issued, was issued, if I mistake not, more than two years after the application was made. Under the 13th section of the act, where a patent is void by reason of a defective specification, if the error has arisen by inadvertence or mistake of the patentee, he may have the mistake corrected by a surrender of the patent, and a new patent issued for the residue of the unexpired term. But the re-issued patents in this case do not appear to have been issued for the unexpired term. The term of fourteen years from the date of the patent, was the time specified on its face.

There is believed to be nothing in the patent office which shows that a foreign patent had been obtained by Morse, or. that the officers of the patent office had any knowledge of the fact. In the 6th section of the act of 1839 [5 Stat. 353], which repeals the act of 1836, which limited to six months from the date of the foreign patent, within which application must · be made in this country for a patent for the same thing, but to that section there is a proviso "that in all cases every such patent shall be limited to the term of fourteen years from the date or publication of such foreign letters patent." This limitation is as specific as the term of fourteen years in the obtainment of a patent and seven years on the renewal of it. And it seems to me if the time limited to the date of a foreign patent in the case stated, may be disregarded, it may be disregarded in the original grant and also in the renewal of a patent. If a patent were issued for twenty years instead of fourteen, and if it were renewed for fourteen years, under the general law, instead of seven, I suppose the patent could not be sustained. The same answer could be given to either of the above cases, as in the case of Morse, "the patent is limited by the law." But sound policy requires that the forms of the law should be observed. especially in the performance of a clerical duty, when a deviation from such forms may lead to endless frauds. The reason for accuracy is much stronger where a foreign patent has been obtained, than in the cases stated, for there is no means within in the reason of the law, by which the date of the foreign patent can be ascertained, whilst our own patent office is accessible to every person. In their eighth plea, the defendants say, that the use of the motive power of the electric or galvanic current, "however developed, for making or printing intelligible characters, signs or letters at any distances, is a substantial and material part of the thing patented by the said letters patent in the said count mentioned; and the said defendants aver that the said Samuel F. B. Morse was not the original and first inventor or discoverer of the said part of the thing patented, but that the same was before known to one Dr. Steinheil of Munich, in the kingdom of Bavaria, and used on a line of telegraphs" in that country, &c. The ninth plea states that the mode and process of propelling and connecting currents of electricity or galvanism through two or more circuits of metallic conductors, is a substantial and material part of the thing patented, &c.; and the said defendants aver, that the said Samuel F. B. Morse was not the original and first inventor of the thing patented, but that the same was before known to one Edward Davy, of London, in England, &c.

By the 6th section of the patent act of 1836, to entitle the applicant to a patent his invention must be original; "not known or used by others before his discovery; and if, on examination, it shall appear to the commissioner that the applicant was not the original and first inventor or discoverer thereof, or that any part of that which is claimed as new, had before been invented, or discovered, or patented, or described in any printed publication in this or any foreign country," &c., no patent shall be granted. The 15th section of the same act provides that the defendant in any action, for an infringment of a patent, may plead the general issue, and give notice "that the patentee was not the original and first inventor or discoverer of the thing patented, or of a substantial and material part thereof claimed as new, or that it had been described in some public work anterior to the supposed discovery thereof by the patentee," &c., "provided, however, that when-

ever it shall satisfactorily appear that the patentee, at the time of making his application for the patent, believed himself to be the first inventor or discoverer of the thing patented, the same shall not be held to be void on account of the invention or discovery, or any part thereof having been before known or used in any foreign country; it not appearing that the same or any substantial part thereof had before been patented or described in any printed publication." This section is somewhat modified by the 9th section of the patent act of 1837 [5 Stat. 194], which provides, "that, whenever by mistake, accident, or inadvertence, and without any willful default or intent to defraud or mislead the public, any patentee shall have in his specification claimed to be the original and first inventor or discoverer of any material or substantial part of the thing patented, of which he was not the first and original inventor, and shall have no legal or just right to claim the same. in every such case the patent shall be deemed good and valid for so much of the invention or discovery as shall be truly and bona fide his own; provided, it shall be a material and substantial part of the thing patented, and be definitely distinguishable from the other parts so claimed without right as aforesaid." And a right is given in the same section, to the patentee, to sustain an action at law or in equity, on the patent for an infringement of the part he has invented, notwithstanding he claimed, in his specifications, more than he invented, without costs, unless he shall have entered a disclaimer before the suit was commenced, and then he may recover costs; and provided, that he shall not have "unreasonably neglected or delayed to enter a disclaimer." These provisions must be construed as though they were embodied in the same act. Prior to the act of 1836, the patent was held to be void where the claim extended beyond the invention. And under that act it was void where a substantial part of the thing invented had "before been patented or described in any printed publication." These are exceptions to the proviso in the 15th section, "that the patent shall not be held void" if the patentee "believes himself to be the first inventor." This act embraces the case where the claimant, acting in good faith, had invented the thing patented, not knowing that the same thing had before been invented, and it had never before been patented nor described in any printed publication. And the 9th section of the act of 1837 somewhat enlarges the rights of the patentee, as it provides that, notwithstanding the 15th section of the act of 1836, the patent shall not be held void where the patentee has acted in good faith, if through "mistake, accident or inadvertence," he claimed more than he invented, and that the patent, under such circumstances, shall be held valid for so much as he invented; provided he has not unreasonably neglected or delayed entering a disclaimer. An action may be maintained without costs on a patent which is within these provisions, although the claim be wider than the invention.

The eighth and ninth pleas in bar, allege that the patentee was not the inventor of the thing claimed, and two persons are named, one in Bavaria and the other in England, who were the first and original inventors. This, it is insisted, is not a full defense in bar of the plaintiff's right, as the patentee, not knowing of the prior invention, may have invented the thing claimed, and believed himself to be the first and original inventor; and if the prior invention had never been patented nor described in a printed publication, the right of the plaintiff is sustainable under the 15th section of the act of 1836. A plea in bar must contain a full defense against the right of the plaintiff, and if it fall short of this, it is bad on demurrer. Now, if the truth of these pleas may be admitted, and the action is still maintainable, the pleas are essentially defective. It is said that the defendants could not aver that Morse did not believe himself to be the inventor, as a matter of belief is not susceptible of proof. And that such an averment can only be made by the party who has knowledge of the fact. It is true that the belief of any thing, being an act of the mind, can only be proved by external developments in words or actions. But the pleader is not limited to the matter of belief, or its ordinary developments. He may aver the fact of notice of the prior invention, and prove it on issue joined, by circumstances. No one can shelter himself under a belief, against facts; and any facts or circumstances which show a knowledge of the prior invention, would be fatal to the right asserted. And this may be averred and proved with as much certainty as that an individual had notice of an outstanding equity, when he purchased and acquired title to real property. I think the eighth and ninth pleas are defective in not averring this knowledge, and the demurrers to them are, therefore, sustained.

The eleventh plea of the defendant, which is to the second count in the declaration, alleges "that the said improvement in the said count mentioned, was at the time of the application of the said Morse for a patent therefor, in public use, with the consent and allowance of the said Morse." To which the plaintiff demurs. The 7th section of the patent act of 1839, provides, that where the right has been sold before the inventor obtains a patent, the purchaser may continue in the exercise of his right, but "that no patent shall be held invalid by reason of such purchase, sale or use, prior to the application for a patent, except on proof of abandonment of such invention to the public; or that such purchase, sale, or prior use, has been for more than two years prior to the application for the patent." This plea is defective. It does not state that the use was more than two years before the application for the patent, nor that the invention was abandoned by Morse. It may have been in public use through a purchase

made of the right within two years preceding the application for the patent, and this, under the above section, does not render the patent invalid. By the 6th section of the act of 1836, the inventor was entitled to a patent, on application, if the thing invented had not been "known or used by others before his invention thereof, and not, at the time of his application for a patent, in public use or on sale with his consent or allowance, as the inventor." But this provision being incompatible with the 7th section of the act of 1839, is necessarily modified. If the sale and use of the invention before the application for the patent, gives the assignee the same right after the emanation of the patent as before, to use the thing invented and to sell it to others, without affecting the validity of the patent, such sale or use, within the limitation of two years before the application, can constitute no objection to the obtainment of the patent. To bar the action, the plea should have averred an abandonment, or that the sale or prior use had been for more than two years before the application. The demurrer to this plea is sustained, and also the demurrer to the twelfth plea. which involves the same principle.

The 13th plea avers a public use of the improvement on several lines specified, "with the consent and allowance of the said Morse, to wit: on the first day of June, 1844." This plea differs only from the two preceding pleas by the averment of the date of the public use under a videlicet. The date as stated seems not to be material, and the plea is defective in not averring an abandonment, or a public use, more than two years prior to the application for the patent. We suppose the act refers to the original application for a patent, and not to the surrender of it with the view to correct some error in the specifications. The demurrer, therefore, to this plea must be sustained.

In bar to the second count, the defendants, in their 14th plea, say, "that the combination of a pen lever, pen point or points, and roller, in the specification annexed to the said letters patent, is a substantial and material part of the thing patented by the said letters patent," and they aver that said part was before known, and "was a part of an electro magnetic telegraph. for which the said Morse had taken out and received letters patent in the United States on the 20th June, 1840." To this plea the plaintiff filed a demurrer. The 12th and 15th sections of the act of 1836, which provide that the commissioner shall not issue a patent where the thing claimed to have been invented has been previously, or a substantial part of it, patented; or where the patent having been issued, shall be void under such circumstances, was designed chiefly. if not exclusively, to apply to a stranger to the application, and not to the applicant personally. But in a certain sense it may apply to him. An individual who has obtained a patent for a thing which he claimed to have invented, cannot at any future time

claim another patent for a substantial part of the same thing; and this is what the plea alleges Morse to have done, which is admitted by the demurrer. In such a case there is no fraud in appropriating the invention of another, but it is an attempt, it would seem, to extend beyond the limitation of the patent law, the exclusive right. This act must be held void as against the policy of the law.

If there be any error or defect in the specifications, it may be corrected by a surrender of the patent without prejudice to the rights of the patentee. If any improvement be made on the original invention, a patent may be obtained for the improvement. But a substantial part of the original invention cannot be patented as an improvement. The specifications are not made a part of this plea by reference or otherwise, nor are they contained in the declaration, so as to enable the court to say whether the alleged improvement is so described as to distinguish it clearly from the original invention. We can judge only from the face of the pleadings, and from them it appears that a substantial part of the improvement was contained in the original patent.

On the principles laid down in relation to the 8th and 9th pleas, the 14th plea is defective. The truth of the plea may be admitted, and yet the action may be maintained under the 9th section of the act of 1837. The claim for more than was new, may have been made "by mistake, accident or inadvertence, and without any willful default or intent to defraud or mislead the public;" and the claimant may be "the inventor of a material or substantial part of the thing patented;" and under the circumstances, the patentee, &c., may not have "unreasonably neglected or delayed to enter a disclaimer." A defense is not complete against the right of the plaintiff, under the above section. which does not deny these hypotheses. "In all actions the defendant may plead any matter which shows why the action does not lie, and which being matter of law, is proper to be shown to the court." Bac. Abr. "Pleas," 9, 3, as in assumpsit, infancy, payment, &c. In these cases, from the nature of the defense, the plaintiff has an implied color of action, bad, indeed, in point of law, if the facts pleaded be true. 1 Chit. Pl. 444. And this is the character of every plea in bar. It must show, if the facts alleged be true, that the plaintiff has no legal right to recover.

In the 15th plea of the defendants, which is also to the second count in the declaration, they say, "that the mode of combining two or more circuits of electricity or galvanism mentioned and described in the specification annexed to the said letters patent as an improvement, is a substantial and material part of the thing patented, &c. And the said defendants aver that in electro magnetic telegraphs before known. modes of combining, on the same principle as that mentioned and described in the specification annexed to the said letters patent, two or more circuits of electricity or galvanism, existed and formed part thereof,

to wit: in one patented to the said Samuel B. Morse, on the 20th June, 1840, by the United States of America, and in one patented to one Edward Davy, of London, in England, on the 4th day of July, 1838, &c. And the said defendants further aver that the said specification annexed to the said letters patent in the said count mentioned, do not specify and point out the improvement in the said mode of combining two or more circuits, &c., so as to distinguish the same from the said modes before known and patented," &c. With the exception of the last clause, the remarks made on the fourteenth plea are applicable to this one. And as regards the objection to the last clause, that the new improvement is not distinguished from the former mode, it is sufficient to say that the specifications are not so incorporated into the plea as to constitute a part of it. Oyer of letters patent is not demandable, as of a deed (1 Archb. 164; 1 Term R. 149), but being a matter of record, it is accessible to the defendants, and should have been stated in the plea, as it is not necessarily a part of the declaration, so as to enable the court to act upon the face of the plea. The demurrer to this plea is sustained.

In the sixteenth plea of the defendants, which is to the first count in the declaration, they say, that "a system of signs, consisting of dots and spaces, and of dots, spaces and horizontal lines," set forth and described in the said letters patent in the said count mentioned, is a substantial and material part of the thing patented by the said letters patent, &c. And the said defendants aver that the said part of the thing patented is not any art, machine, manufacture or composition of matter, or any improvement of any art, machine, manufacture or composition of matter. The patent not being before us, as it would be, if offered in evidence, or copied into the declaration or plea, we cannot decide this question. Craving oyer does not make the specifications a part of the plea. It would seem that the system of signs named in the plea, constitutes a language, and would come appropriately under the copy-right act. But, if these signs are only named as the effect produced by certain mechanical inventions or combinations, they may not be liable to objection under the patent laws. This can only be decided by an inspection of the patent. The demurrer to this plea, on grounds stated in regard to other pleas, is sustained.

In the seventeenth plea, which also applies to the first count in the declaration, the defendants say, "that the use of the motive power of the electro galvanic current, however developed, for making or printing intelligible characters, signs or letters at any distances, is a substantial and material part of the thing patented by said letters patent, and separately and distinctly claimed in the specifications annexed to said letters patent;" and the defendants aver that Morse was not the first and original discoverer, &c. And in the eighteenth plea after stating the above, the defendants aver that the thing so "patented and claimed, is

not any art, machine, manufacture or composition of matter, or any improvement on any art, machine, manufacture or composition of matter," &c. These pleas are subject to the objection that the specifications are not brought before us by the declaration or pleas, and we cannot, therefore, determine the points raised by the demurrers. It may not, however, be improper to remark, that a principle is not patentable. And "the motive power of the galvanic current, however developed to produce a given result," can no more be patented than the motive power of steam to propel boats, however applied. The discovery or application of a power in physics can give no monopoly of that power. Electricity and steam were long known as powerful agents in nature, before the application of either as a motive power. And neither can be exclusively appropriated, except through the instrumentality of mechanical inventions or combinations which produce a certain effect.

[NOTE. Pursuant to the agreement between the parties, the cause was certified to the supreme court. The cause was then remanded to the circuit court, with directions to permit either party to amend his pleadings, and also to allow the defendants an opportunity to distinguish their case from that of O'Reilly v. Morse, 15 How. (56 U. S.) 62, which the court relied upon as deciding this case. 15 How. (56 U. S.) 137.]
[For other cases involving this patent, see O'Reilly v. Morse, 15 How. (56 U. S.) 62; Morse v. Bain. Case No. 9,861; Smith v. Downing, Id. 13,036; French v. Rogers. Id. 5,103; Smith v. Cummings. Id. 13,034; Smith v. Selden, Id. 13,104; Clum v. Brewer, Id. 2,909; Western Tel. Co. v. Magnetic Tel. Co., 21 How. (62 U. S.) 456; Western Tel. Co. v. Penniman, Id. 460.]