## In re PEILER. *
### Patent Appeal No. 2902.

Court of Customs and Patent Appeals.
April 4, 1932.

Vernon M. Dorsey, of Washington, D. C. (S. F. Parham, of Washington, D. C., and L. G. Bates, of Hartford, Conn., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

*Rehearing denied May 23, 1932.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant has appealed from the decision of the Board of Appeals of the United States Patent Office, refusing to allow certain claims in his application, serial No. 90,399½, filed February 24, 1926, for claimed improvements in glass-feeding mechanism and methods. As the case is submitted to this court, refused apparatus claims 10, 12, 16, 38, and 41, and method claims 17, 18, and 26 are the only ones involved, the others having been eliminated by withdrawal, or otherwise.

The appellant has filed a series of applications in the Patent Office disclosing the subject-matter of the invention in issue here. Two of these applications which have ripened into patents were involved in our decision in In re Peiler, 48 F.(2d) 405, 18 C. C. P. A. 1102. These patents are numbered 1,573,742 and 1,655,391, issued, respectively, on February 16, 1926, and January 3, 1928. The present application states that it is a division of the application in the last-named patent above.

A description of the apparatus, so far as the same is material, was given by us in In re Peiler, supra, and will not here be repeated.

The involved claims were rejected by both tribunals in the Patent Office. The Board of Appeals made reference to the two Peiler patents hereinbefore mentioned, and to Story, 1,210,559, January 2, 1917. In deciding the matter, the board called attention to the fact, which is admitted, that the specification and drawings of the parent patent No. 1,655,391 and the application now before us are identical. It was thought by the Board that the claims in said patent probably fully protect the appellant in anything he claims here. Particularly, the Board was of opinion that claims 55 and 59 of the parent application, while somewhat broader and more generic than those here involved, covered the same inventive idea; that the methods of manipulating the stroke of the impeller suggested in the claims here involved would be obvious to any one skilled in the art on inspection and examination of the disclosures of the parent application, even if the specific disclosures relative thereto, which form the basis of the claims in issue, had been omitted. Proceeding upon this theory, the board felt that to allow the appellant's claims here

would be to further and unduly prolong his monopoly.

Apparatus claim 10 and method claim 17 are as follows:

"10. Apparatus for segregating molten glass into mold charges including a container for the glass having an outlet below the surface of the glass, means for periodically accelerating the gravity discharge of the glass through the outlet, means operating in timed relation to the accelerating means for retarding the gravity discharge of the glass through the outlet, and means for varying the said timed relation between the accelerating and retarding operations."

"17. The method of feeding molten glass in mold charges, which comprises periodically accelerating and retarding in timed relation to each other gravity flow of glass through an outlet and suspending the issued glass beneath the outlet, severing a mold charge from each suspended mass, and changing the time of occurrence of the periodic accelerating impulses relatively to the retarding impulses to change the diameters of predetermined portions of the subsequently formed suspended mold charge masses."

The remaining claims have no substantial points of difference from those quoted.

Claims 55 and 59 of the parent application (patent No. 1,655,391) are as follows:

"55. Apparatus for feeding molten glass in a succession of freely hanging mold charge masses, comprising a glass container provided with a restricted well or impulsion chamber having an upper inlet in communication with a parent body of glass, a downwardly opening outlet, and a vertically reciprocating implement having its lower portion constantly in said impulsion chamber and alternately expelling and retracting glass through said outlet, without interrupting communication between the outlet and the inlet of said impulsion chamber."

"59. A glass feeder for delivering glass mold charges of a variety of controlled sizes and shapes, including an enclosure defining a channel for flowing the glass from a furnace and having a discharge outlet near its outer end, an impeller extending down into the glass and reciprocating in line with said outlet to control the discharge of glass from said outlet, shears periodically closing and opening below said outlet, and a system of controls, including means for adjusting the upper and lower limits of the movement of said impeller, means for adjusting the vertical position of said shears, means for adjusting the relative time of operation of the impeller movements and of the shear movements, and means for controlling the temperature of the glass delivered to said outlet, all of the said controls being selected in relation to one another for mutual co-operation and acting in combination, to produce compact mold charges of workable glass below said outlet, to impart to said charges the particular weight, length and cross-sectional dimensions best suited to the molds which receive said charges, to maintain constant the selected weight and dimensions of the charges, and to change the weight and dimensions of the charges to suit a variety of molds."

The appellant thus states in his brief his position as to the involved claims:

"The salient features of the inventions of the claims remaining on appeal, except claim 23, relate to the means for or steps of regulably controlling the upstroke and the downstroke of the plunger in each reciprocation with respect to each other and independently of each other so as to produce selectively various charge shaping effects. To this end, the invention of these appealed claims may be performed by the use of plunger reciprocating mechanism, including the adjustable cam structure shown in Figs. 14 to 19, inclusive (R. side folio 38), described in the portion of the specification that begins in line 5 of Record page 14 and extends through the first paragraph on Record page 14, and any suitable arrangement of operating connections, conventional or otherwise, for utilizing the rotary movements of the adjustable cam structure to effect cycles of reciprocation of the plunger, the only essential requirement being that the component upstroke and downstroke of each reciprocation shall be independently regulable. * * *

"Any mechanism, whether cam actuated or pneumatically operated, which would provide the required adjustment between the component strokes or discharge accelerating and discharge retarding operations of the discharge controlling implement or means for the purpose just stated would fulfill the necessary requirements of the appealed claims. * * *

"These charge shaping adjustments which are possible with the particular cam-actuated plunger supporting, adjusting and operating mechanism whereby the rotary movements of the impeller cam are converted into reciprocations of the impeller are neither specified nor required for the performance of the appealed claims. On the

contrary, they comprise distinctly different subject matter or species of invention from which the inventions of the appealed claims are separable."

We take it from these statements that appellant construes the claims in question to be broad generic claims as to the adjustable control of the impeller, which would include any mechanism that would perform this function, whether it might be the device shown by appellant in his preceding patents or in his present pending application, or in some device entirely different, but performing the same functions. In other words, having claimed, as he states, a specific form in his patent 1,655,391, he now makes a generic claim covering any form.

We are unable to discern wherein there is any inventive matter claimed in the rejected claims, in the mechanism for adjusting the operation of the impeller element, which is not sufficiently set forth in said claim 59 to give to the appellant adequate protection upon his inventive idea therein. The language, "means for adjusting the upper and lower limits of the movement of said impeller," includes, not only a manual adjustment of the cams upon the shaft, but also an adjustment by means of handles, worm gears, sectors, and beveled cog wheels while the machine is in operation, or otherwise. Not only will it include all these possible elements, but the language is broad enough to include other mechanism not shown by the disclosure of the patent. Hence, if the appellant considers his present claims to be broad and generic, he has such a claim in his existing patent.

On the other hand, if it be insisted that the present claims are more specific than those in the parent patent, and hence show a patentable invention in that respect, we observe that, in said claim 59, the appellant has claimed a reciprocating impeller and "means for adjusting the upper and lower limits of the movement of said impeller," while in said claim 10, for example, he has, in substance, claimed means for accelerating the discharge and means for retarding the discharge, in timed relation, and means for varying these relations.

We find ourselves in agreement with the following statement of the Board of Appeals: " * * * While it may be true that all of the claims of the patent are more generic as to the question of adjustment of the impeller and the shearing mechanism, the appealed claims are based upon the same apparatus as that disclosed in the patent. We do not have here two patentably distinct embodiments of an invention in which broad claims are placed in one application together with claims of one of the species and the claims of the other application are restricted to the other species. We see no reason why appellant could not have received any proper protection to which he was entitled, as to the subject matter now before us, in the parent case. Perhaps he has already received such protection, as the patent under discussion, as previously stated, contains broad claims. In any event it is our view that the various adjustments for which appellant seeks protection here are only the obvious ones which one skilled in the art might choose to make when operating the machine disclosed in the patent, in view of the teachings of that patent that the size and shape of the charge can be controlled by varying the timing of the impeller and the shears. Certainly it is to be presumed that the public will have received sufficient instruction as to its operation so that the results which will obviously follow from varying the time of movements of the up-and-down stroke of the impeller and of the severing mechanism may be understood."

The appellant, having disclosed or claimed no matter patentably distinct from that claimed in his existing patent, cannot have a second patent upon the same invention. In re Robinson, 48 F.(2d) 931, 18 C. C. P. A. 1271; In re Laughlin, 48 F.(2d) 921, 18 C. C. P. A. 1239; In re Byck, 48 F.(2d) 665, 18 C. C. P. A. 1208; In re Hargraves, 53 F.(2d) 900, 19 C. C. P. A. (Patents) ——.

The decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, Associate Judge, concurs in the conclusion.