# United States Court of Appeals for the Federal Circuit

---

**GILEAD SCIENCES, INC., HOFFMANN-LA ROCHE, INC., F. HOFFMANN-LA ROCHE, LTD., AND GENENTECH, INC.,**
*Plaintiffs-Appellees,*

**v.**

**NATCO PHARMA LIMITED AND NATCO PHARMA, INC.,**
*Defendants-Appellants.*

---

2013-1418

---

Appeal from the United States District Court for the District of New Jersey in Nos. 11-CV-1455 and 11-CV-4969, Judge Susan D. Wigenton.

---

Decided: April 22, 2014

---

LEORA BEN-AMI, Kirkland & Ellis LLP, of New York, New York, argued for plaintiffs-appellees. With her on the brief were PATRICIA A. CARSON and BENJAMIN A. LASKY.

JEREMY C. LOWE, Axinn, Veltrop & Harkrider LLP, of Hartford, Connecticut, argued for defendants-appellants. With him on the brief was THOMAS K. HEDEMANN.

---

Before RADER, *Chief Judge,* PROST and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CHEN.

Dissenting opinion filed by *Chief Judge* RADER.

CHEN, *Circuit Judge.*

Gilead Sciences, Inc. ("Gilead") owns United States Patent Nos. 5,763,483 and 5,952,375, which are directed to antiviral compounds and methods for their use. While the patents list the same inventors and the written descriptions disclose similar content, they do not claim priority to a common patent application and have different expiration dates. Gilead sued Natco Pharma Limited ("Natco") for infringement of the '483 patent after Natco filed a request with the Food and Drug Administration seeking approval to market a generic version of one of Gilead's drugs that is allegedly covered by the '483 patent. In response, Natco asserted that the '483 patent was invalid for obviousness-type double patenting over Gilead's '375 patent. In Gilead's view, the '375 patent cannot serve as a double patenting reference against the '483 patent because, even though the '483 patent's expiration date is twenty-two months after the '375 patent's expiration date, the '375 patent issued after the '483 patent.

The United States District Court for the District of New Jersey agreed with Gilead and, pursuant to a stipulation, granted it final judgment on infringement. Natco appeals that judgment and argues that the '375 patent should qualify as an obviousness-type double patenting reference for the '483 patent because it expires before the '483 patent. Because the obviousness-type double patenting doctrine prohibits an inventor from extending his right to exclude through claims in a later-expiring patent

that are not patentably distinct from the claims of the inventor's earlier-expiring patent, we agree with Natco that the '375 patent qualifies as an obviousness-type double patenting reference for the '483 patent. We therefore vacate the district court's decision and remand.

I

The '375 and '483 patents were issued to the same inventors and are commonly owned by Gilead. The inventions disclosed in both patents are related to the inhibition of viruses through selective interference with certain enzymes. The written descriptions of the patents are very similar and, in substantial parts, identical.

Despite their similarities in content, however, the '375 and '483 patents are not part of the same family of patents and were not before the same patent examiner. Instead, Gilead crafted a separate "chain" of applications, having a later priority date than the '375 patent family. That separate chain resulted in the issuance of the '483 patent. Because the patents do not claim priority to any common application, they will expire at different times as governed by the provisions of the Uruguay Rounds Agreement Act. The '375 patent was filed on February 26, 1996, and claims priority to a regular utility patent application filed on February 27, 1995. It expires twenty years later on February 27, 2015, and issued on September 14, 1999. The '483 patent was filed on December 27, 1996, and claims priority to a provisional utility patent application filed on December 29, 1995. Though filed after the application for the '375 patent, it issued first, on June 9, 1998, and expires last, on December 27, 2016.[1]

_____

[1] Although the '483 patent's priority date is based on the filing date of a provisional application (December 29, 1995), it expires twenty years from the patent's earli-

After the '483 patent issued, Gilead filed a terminal disclaimer in the application that led to the '375 patent. Through it, Gilead disclaimed any portion of the '375 patent term that extended beyond the expiration date of the '483 patent—which, absent abandonment, would not occur since, as explained above, the '375 patent's expiration date is before the '483 patent's expiration date. From the prosecution history records, that appears to be the first time Gilead informed either the examiner of the '375 patent or of the '483 patent about the existence of the other patent application. No terminal disclaimer was filed for the '483 patent.

The following diagram illustrates the relevant dates for each patent, and how, because of different priority dates, the two patents have different expiration dates.



II

In March 2011, Gilead filed the current suit against Natco, alleging that Natco's Abbreviated New Drug Application No. 202-595 infringed the '483 patent. Among other defenses, Natco asserted that the '483 patent was invalid for obviousness-type double patenting in light of claim 8 of the '375 patent. In December 2012, the district

---

est non-provisional filing date (December 27, 1996). *See* 35 U.S.C. § 154.

court granted summary judgment in favor of Gilead on Natco's double patenting defense.

Relying on two district court cases, the court concluded that "a later-issued but earlier-expiring patent" cannot "serve as a double-patenting reference against an earlier-issued but later-expiring patent." J.A. 7 (citing *Abbott Labs. v. Lupin Ltd.*, 2011 WL 1897322 (D. Del. May 19, 2011) and *Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, 761 F. Supp. 2d 210 (D. Del. 2011)).[2] It explained that "[t]he Uruguay Round Agreements Act of 1994, which became effective on June 8, 1995, changed the term for a U.S. patent from seventeen years from the patent issue date to twenty years from the earliest effective filing date." J.A. 6 (citing Uruguay Round Agreements Act ("URAA"), Pub.L. No. 103–465, § 532(a), 108 Stat. 4809, 4983–85 (1994)). In the district court's view, any "extensions of the patent terms at issue were not

---

[2] The district court did not cite *Ex Parte Pfizer, Inc., Patent Owner & Appellant*, 2010 WL 532133 (Bd. Pat. App. & Interf. Feb. 12, 2010). In that case, the Board of Patent Appeals and Interferences held that an earlier-expiring patent could qualify as an obviousness-type double patenting reference regardless of whether it issues prior to or after another patent. *Id.* at *21. According to the Board, it was the "patent term and not the patent issue date that determines if a claim . . . qualifies as a double patenting reference." *Id.* The later-expiring patent, in the Board's opinion, would impermissibly block the public from practicing the invention (and obvious derivations thereof) disclosed in the patents that expired first—which was "precisely what obviousness-type double patenting was intended to prevent"—an extension of a patentee's "right to exclude the public from practicing" the invention in an expired patent. *Id.*

unlawful because the extensions were not a result of gamesmanship, but instead were a result of changes to patent laws." J.A. 7.

In May 2013, after Natco conditionally stipulated to infringement of two claims of the '483 patent, the district court certified its summary judgment ruling for appeal under Rule 54(b) because Natco's "only invalidity defense on the '483 patent" was obviousness-type double patenting. J.A. 10.

Natco filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1295(a). For purposes of this appeal, we assume that the '483 patent claims a mere obvious variant of the invention claimed in the '375 patent.

### III

This appeal presents a narrow question: Can a patent that issues after but expires before another patent qualify as a double patenting reference for that other patent? We conclude under the circumstances of this case that it can and, therefore, that the district court erred in excluding the '375 patent as a potential double patenting reference for the '483 patent.

### A

The prohibition against double patenting is a long-standing doctrine of patent law. It is based on the core principle that, in exchange for a patent, an inventor must fully disclose his invention and promise to permit free use of it at the end of his patent term. As the Supreme Court has explained, "[i]t is self-evident that on the expiration of a patent the monopoly created by it ceases to exist, and the right to make the thing formerly covered by the patent becomes public property. It is upon this condition that the patent is granted." *Singer Mfg. Co. v. June Mfg.*

*Co.*, 163 U.S. 169, 185 (1896).[3]   The bar against double patenting was created to preserve that bargained-for right held by the public.  *See, e.g.*, *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 197-98, 202 (1894); *Suffolk Co. v. Hayden*, 70 U.S. 315, 317 (1865); *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1346 (Fed. Cir. 2010); *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985); *Application of Robeson*, 331 F.2d 610, 614 (CCPA 1964); *Odiorne v. Amesbury Nail Factory*, 18 Fed. Cas. 578, 579 (C.C.D. Mass. 1819).  If an inventor could obtain several sequential patents on the same invention, he could retain for himself the exclusive right to exclude or control the public's right to use the patented invention far beyond the term awarded to him under the patent laws.  As Justice Story explained in 1819, "[i]t cannot be" that a patentee can obtain two patents in sequence "substantially for the same invention[] and improvements"; "it would completely destroy the whole consideration derived by the public for the grant of the patent, viz. the right to use the invention at the expiration of the term."  *Odiorne*, 18 Fed. Cas. at

---

[3]    *See also, e.g.*, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-34 (2003) ("The rights of a patentee . . . are part of a carefully crafted bargain . . . under which, once the patent . . . monopoly has expired, the public may use the invention . . . at will and without attribution." (internal quotation marks and citations omitted)); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230 (1964) ("[W]hen the patent expires the monopoly created by it expires, too, and the right to make the article . . . passes to the public."); *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 197-98 (1894) (explaining history of and collecting cases on double patenting); *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013); *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985); *Odiorne v. Amesbury Nail Factory*, 18 Fed. Cas. 578, 579 (C.C.D. Mass. 1819) (Story, J.).

579. Thus, the doctrine of double patenting was primarily designed to prevent such harm by limiting a patentee to one patent term per invention or improvement.

The scope of the bar against double patenting has also been well-established in patent law jurisprudence. Federal courts for over a century have applied the principles of the doctrine as a means to preserve the public's right to use not only the exact invention claimed by an inventor when his patent expires, but also obvious modifications of that invention that are not patentably distinct improvements. *See Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 967 (Fed. Cir. 2001) ("The judicially-created doctrine of obviousness-type double patenting . . . prohibit[s] a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent.").[4] With the addition of § 253 in 1952, however,

---

[4]     *See also, e.g.*, *In re Hubbell*, 709 F.3d at 1145; *In re Longi*, 759 F.2d at 892; *In re Peiler*, 56 F.2d 878, 878 (CCPA 1932) (affirming double patenting rejection where claim "covered the same inventive idea" as "obvious to any one skilled in the art on inspection and examination of the disclosures of the parent application"); *In re Swan*, 46 F.2d 572, 573 (CCPA 1931) (affirming double patenting rejection of specific use for prior invention where there was not "a patentable distinction between [the] former patent and th[e] further and more specific claim [in the new patent application]"); *Kirsch Mfg. Co. v. Gould Mersereau Co.*, 6 F.2d 793, 794 (2d Cir. 1925) (Hand, J.) (affirming invalidity of patent on double patenting grounds after concluding that the later claims were "an obvious modification" that "accomplishes substantially the same result" by "difference in means [that] did not require invention" that was "a new display of ingenuity beyond

Congress slightly altered the effect of the bar on double patenting.

In *Application of Robeson*, our predecessor court first addressed the impact of that statutory provision, which in part permits a patentee to disclaim any terminal part of the term of his patent without a disclaimer of claim scope. 331 F.2d at 614. It explained that 35 U.S.C. § 253's terminal disclaimer provision provided patent owners a remedy against a double patenting charge by "permit[ting] the patentee to cut back the term of a later issued patent so as to expire at the same time as the earlier issued patent." *Robeson*, 331 F.2d at 614 n.4 (citing commentary of P.J. Federico). Relying on that understanding of the purpose of terminal disclaimers permitted by the new § 253, the court concluded that a terminal disclaimer could negate a double patenting rejection in some instances.

> Where, as here, the claimed subject matter is an obvious modification of what has already been claimed, a second patent is contrary to one of the fundamental principles underlying the patent system, namely, that when the right to exclude granted by a patent expires at the end of the patent term, the public shall be free to use the invention as well as obvious modifications thereof or

the compass of the routineer" or "the limited imagination of the journeyman"); *In re Isherwood*, 46 App. D.C. 507, 511 (D.C. Cir. 1917); *Otis Elevator Co. v. Portland Co.*, 127 F. 557, 561-63 (1st Cir. 1903); *Palmer Pneumatic Tire Co. v. Lozier*, 90 F. 732, 740-45 (6th Cir. 1898); *Swift v. Jenks*, 29 F. 642, 643 (C.C.N.D.N.Y. 1887); *Wheeler v. McCormick*, 29 F. Cas. 905, 909 (C.C.S.D.N.Y. 1873); *Smith v. Ely*, 22 F. Cas. 533, 537 (C.C.D. Ohio 1849) *remanded on other grounds*, 56 U.S. 137 (1853).

obvious improvements thereon. Thus, to grant a second patent for an obvious variation deprives the public of those rights. If, however, the second patent expires simultaneously with the first, the right to fully utilize the patented discovery at the expiration date remains unimpaired. . . . [H]ere, the only real objection to granting appellant's application is an extension of the monopoly. The terminal disclaimer, which Congress had expressly provided, removes any danger of such result.

*Id.* at 614-15.

Thus, the *Robeson* court reasoned that a terminal disclaimer should be a permissible means to overcome the prohibition on double patenting when it aligns the expiration dates of an inventor's several patents that claim mere obvious variations of the same invention to create a single term of limited exclusivity. *Id.*; *see Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1280 (Fed. Cir. 1992) (explaining that "obviousness-type double patenting . . . could be overcome by filing a terminal disclaimer, which had been provided for in section 253 of the 1952 Patent Act for that very purpose"). Indeed, as our predecessor court later explained, a terminal disclaimer "causes [such] . . . patents to expire together, a situation . . . which is tantamount for all practical purposes to having all the claims in one patent." *Application of Braithwaite*, 379 F.2d 594, 601 (CCPA 1967).

B

With those principles of double patenting in mind, we now turn to the question presented by this appeal: whether a later-issued patent can serve as a double patenting reference for an earlier-issued patent if the later one expires first.

As discussed, it is a bedrock principle of our patent system that when a patent expires, the public is free to use not only the same invention claimed in the expired patent but also obvious or patentably indistinct modifications of that invention.  *See* discussion *supra*; *In re Longi*, 759 F.2d at 892 ("The public should . . . be able to act on the assumption that upon the *expiration* of [a] patent it will be free to use not only the invention claimed in the patent but also [any] modifications or variants [thereof] which would have been *obvious* to those of ordinary skill in the art at the time the invention was made.").  The double patenting doctrine has always been implemented to effectively uphold that principle.  *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1372 (Fed. Cir. 2005).

And that principle is violated when a patent expires and the public is nevertheless barred from practicing obvious modifications of the invention claimed in that patent because the inventor holds another later-expiring patent with claims for obvious modifications of the invention.[5]  Such is the case here.  The '375 patent expires on February 27, 2015.  Thus, come February 28, 2015, the public should have the right to use the invention claimed in the patent and all obvious variants of that invention.  *See* discussion *supra*.  That was the condition upon which the '375 patent was issued to the inventors.  *See* discus-

---

[5]  Note that we address only obvious variants of an invention, not separately patentable improvements.  The public's ability to practice an invention claimed in an expired patent may be further restricted by, for example, an overlapping patent covering patentably *distinct* subject matter.  But the point of the double patenting doctrine is to protect the public from attempts by inventors to effectively extend their patent term through a later-expiring patent claiming patentably *indistinct* subject matter.

sion *supra*. But the public will not be free to do so. The '483 patent does not expire until December 27, 2016, and it (we assume for this appeal) covers obvious modifications of the invention claimed in the '375 patent. The '483 patent, therefore, extends the inventors' term of exclusivity on obvious variants of the invention claimed in the '375 patent for an additional twenty-two months past the expiration of the '375 patent. That plainly violates the public's right to use the invention claimed in the '375 patent and all obvious variants of it after the '375 patent expires.

Gilead's response is simply that the "'*375 patent* in no way extends the term of the exclusivity *for the '483 patent*." Respondent's Br. at 14 (emphasis added). Gilead argues that we should focus on the potential term extension for the '483 patent instead of the '375 patent because the '483 patent issued first. However, we see little import here in the fact that the '483 patent issued first. Gilead cites cases that describe the double patenting bar as applicable to the "second" or "later" issuing patent. *See* Respondent's Br. at 21-27. But those cases dealt with patents to which the URAA did not apply and, critical to a double patenting analysis, to patents for which the expiration date was inextricably intertwined with the issuance date. *See, e.g., Miller*, 151 U.S. at 197; *Suffolk Co.*, 70 U.S. at 315-19; *In re Hubbell*, 709 F.3d at 1145; *Perricone*, 432 F.3d at 1372; *Eli Lilly,* 251 F.3d at 967; *In re Longi*, 759 F.2d at 892; *Application of Vogel*, 422 F.2d 438, 441 (CCPA 1970); *Robeson*, 331 F.2d at 614. As discussed above, the primary ill avoided by enforcement of the double patenting doctrine is restriction on the public's freedom to use the invention claimed in a patent and all obvious modifications of it after that patent *expired*. Thus, the focus on controlling the patent term of later

*issued* patents in those cases makes perfect sense: before the URAA, later issued patents *expired* later.[6]

In other words, for double patenting inquiries, looking to patent issue dates had previously served as a reliable stand-in for the date that really mattered—patent expiration. But as this case illustrates, that tool does not necessarily work properly for patents to which the URAA applies, because there are now instances, like here, in which a patent that issues first does not expire first. Therefore, in light of the principles reflected in our prior case law as explained above, it is the comparison of Gilead's patent expiration dates that should control, not merely the issuance dates.

Relying on issuance date only as Gilead prefers would also have several shortcomings. First, if we were to hold that issuance date is the determining factor for double patenting inquiries for post-URAA patents, the terms of such patents could be subject to significant gamesmanship during prosecution. In the URAA, Congress clearly limited the one period of exclusivity an inventor can obtain for each of his inventions to twenty years from the filing date of the earliest application to which the inventor claims priority—with some limited exceptions. *See* 35 U.S.C. § 154(a) (2013); URAA, 108 Stat 4809 § 532 (a)(1). But if the double patenting inquiry was limited by issuance date, inventors could routinely orchestrate patent term extensions by (1) filing serial applications on obvious modifications of an invention, (2) claiming priority to different applications in each, and then (3) arranging for the application claiming the latest filing date to issue first. If that were to occur, inventors could potentially

_____

[6]    There are exceptions to that rule of course, such as patents that qualify for term extensions, but none are relevant to the facts or our discussion here.

obtain additional patent term exclusivity for obvious variants of their inventions while also exploring the value of an earlier priority date during prosecution.

Second, if the double patenting inquiry was determined by issuance date for post-URAA patents, there could be a significant difference in an inventor's period of exclusivity over his invention (and its obvious variants) based on mere days' difference in the issuance of several patents to the inventor. Here, for example, if the '375 patent issued *the day before* the '483 patent, in Gilead's view, the last twenty-two months of the term of the '483 patent would be an improper extension of patent term.



Now if the '375 patent issued *the day after* the '483 patent, those last twenty-two months of the term of the '483 patent would not be an improper extension of patent term.



Such significant vacillations in an inventor's period of exclusivity over his invention and its obvious variants is simply too arbitrary, uncertain, and prone to gamesmanship. Congress could not have intended to inject the potential to disturb the consistent application of the doctrine of double patenting by passing the URAA.

Looking instead to the earliest expiration date of all the patents an inventor has on his invention and its obvious variants best fits and serves the purpose of the doctrine of double patenting. Permitting any earlier expiring patent to serve as a double patenting reference for a patent subject to the URAA guarantees a stable benchmark that preserves the public's right to use the invention (and its obvious variants) that are claimed in a patent when that patent expires.

Furthermore, using the expiration date as a benchmark in post-URAA cases of obviousness-type double patenting preserves the ability of inventors to use a terminal disclaimer of later-expiring patents to create one expiration date for their term of exclusivity over their inventions and obvious variants, "which is tantamount for all practical purposes to having all the claims in one patent." *Braithwaite*, 379 F.2d at 601. Such disclaimers would preserve the public's right to use a patented invention and obvious modifications of it when the earliest patent expires and would effectively overcome any objection to improper term extension.

Indeed, looking to the expiration date instead of issuance date is consistent with the PTO's guidance in the Manual of Patent Examining and Procedure ("MPEP"). The MPEP presents a hypothetical where two pending patent applications filed by the same inventor are subject to provisional obviousness-type double patenting rejections over each other. *See* MPEP § 804.I.B.1. In such a situation, the MPEP instructs that a terminal disclaimer

is required for the later of the two applications (which the hypothetical anticipates to have the later expiration date) before that application can issue. *See id.* Applied to the facts here, a terminal disclaimer would have been required for the '483 patent.

We therefore hold that an earlier-expiring patent can qualify as an obviousness-type double patenting reference for a later-expiring patent under the circumstances here. In cases where such obviousness-type double patenting is present, a terminal disclaimer can preserve the validity of the later-expiring patent by aligning its expiration date with that of the earlier-expiring patent. That disclaimer will most effectively enforce the fundamental right of the public to use the invention claimed in the earlier-expiring patent and all obvious modifications of it after that patent's term expires.

## IV

Gilead currently enjoys the benefits of the '375 patent, including an earlier priority date and the specific exclusivity provided by the scope of its claims. The expiration of the '375 patent triggers the public's right to use the invention claimed in it and all obvious modifications of that invention. When the '375 patent expires, however, the public will not be free to do so because (as we assume) the '483 patent claims some of those obvious variants of the invention in the '375 patent and expires twenty-two months later. Therefore, if it does indeed claim obvious variants of the invention claimed in the '375 patent, the '483 patent would violate the doctrine against double patenting.

Accordingly, the district court erred in concluding that the '483 patent could not be invalid for double patenting because the '375 patent could not qualify as an obviousness-type double patenting reference. We therefore

vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

Each party shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

---

**GILEAD SCIENCES, INC., HOFFMANN-LA ROCHE, INC., F. HOFFMANN-LA ROCHE, LTD., AND GENENTECH, INC.,**
*Plaintiffs-Appellees,*

**v.**

**NATCO PHARMA LIMITED AND NATCO PHARMA, INC.,**
*Defendants-Appellants.*

---

2013-1418

---

Appeal from the United States District Court for the District of New Jersey in Nos. 11-CV-1455 and 11-CV-4969, Judge Susan D. Wigenton.

---

RADER, *Chief Judge*, dissenting.

Today the court expands the judicially-created doctrine of obviousness-type double patenting. The court holds that a later-issued, but earlier-expiring patent can invalidate a first-issued, but later expiring patent—even where the patents are subject to a requirement of common ownership. Because this expansion is unwarranted, I respectfully dissent.

## I.

To be clear, my dissent today is not meant to disparage the doctrine of obviousness-type double patenting.

Undoubtedly, the doctrine has served a useful purpose over the years.  Immediately prior to the Uruguay Round Agreements Act (URAA) and the General Agreement on Tariffs and Trade (GATT), a U.S. patent enjoyed a term of 17 years from its issue date.  A patentee could file successive continuations and obtain additional patent term for obvious modifications of its earlier claims where its earlier patents and applications did not qualify as prior art, and perhaps do so *ad infinitum*.  Courts used obviousness-type double patenting to curtail that practice.  *See, e.g., Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001) ("The judicially-created doctrine of obviousness-type double patenting cements that legislative limitation [on the duration of the patentee's right to exclude] by prohibiting a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent."(citation omitted)).

However, based on changes implemented as part of the GATT and URAA, the term of a patent is now generally limited to 20 years from its filing date or the earliest claimed filing date under 35 U.S.C. §§ 120, 121 or 365(c). 35 U.S.C. § 154(a)(2).  With this change, successive continuations generally do not result in any additional patent term.  Rather, the filing date of the earliest member of a patent family limits the rest of the related patents.  *Id.* Thus a primary motivation behind the doctrine— preventing the effective extension of patent term—is largely no longer applicable.  *Cf. In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009) (noting that under post-GATT patent terms a double patenting issue may arise in limited instances based on changes to patent terms under 35 U.S.C. §§ 154, 156).

That being said, the doctrine of obviousness-type double patenting is also predicated on a second underlying policy concern—preventing multiple infringement suits by different assignees asserting essentially the same patent-

ed invention. *Id.* This secondary and far less prevalent concern receives some notice in this court's case law. *See, e.g.*, *In re Griswold*, 365 F.2d 834, 840 n.5 (CCPA 1966). However, in this case, neither policy concern justifies an extension of double patenting.

## II.

The court correctly frames the narrow question presented in this appeal: "Can a patent that issues after but expires before another patent qualify as a double patenting reference for that other patent?" Maj. Op. at 6. But the court then proceeds to craft a new rule to answer the question in the affirmative. According to the court, the expiration dates of the patents govern the inquiry irrespective of filing or issue dates. Maj. Op. at 13.

As an initial matter, I would proceed more cautiously before articulating a new rule to address this novel situation. In my opinion, courts should be reluctant to create or expand judge-made exceptions to statutory grants. *See, e.g.*, *W. Union Tel. Co. v. Lenroot*, 323 U.S. 490, 514 (1945) (Murphy, J., dissenting) ("[T]he judicial function does not allow us to disregard that which Congress has plainly and constitutionally decreed and to formulate exceptions which we think, for practical reasons, Congress might have made had it thought more about the problem."); *United States v. Rutherford*, 442 U.S. 544, 559 (1979) ("Whether, as a policy matter, an exemption should be created is a question for legislative judgment, not judicial inference."). Thus, I would view the question through the lens of judicial restraint.

With this view, I see no reason to apply double patenting under our two accepted justifications for the doctrine. First, this case does not raise the policy concern regarding subsequent extensions of patent term. Gilead's subsequent '375 patent unquestionably did *not* extend the term of the earlier-issuing '483 patent. The '375 patent claims priority to an earlier filing date and consequently expires

first.  Notably, if the '375 patent had never issued, Gilead would certainly be entitled to the '483 patent's 2016 expiration date.

Second, this case does not involve the potential for harassment by multiple assignees asserting essentially the same patented invention.  *E.g.*, *Fallaux*, 564 F.3d at 1319.  Here, the '375 patent is subject to a terminal disclaimer with respect to the '483 patent and thus is only enforceable so long as it and the '483 patent are commonly owned.  J.A. 546–47.  The risk of separate parties suing on the two patents is therefore adequately mitigated.

Against this backdrop, the question becomes whether Gilead's conduct warrants the creation of a new rule proscribing its patent rights.  Because both of the accepted justifications for the obviousness-type double patent doctrine are not implicated, I would find Gilead's conduct does not rise to that level.

### III.

Respectfully, I find the court's reasoning to the contrary unpersuasive.  Under 35 U.S.C. § 154(b) a patentee may not maintain its earliest possible priority date while seeking to extend the expiration date of subsequent patent claims.  Rather, to obtain a longer patent term, a patentee must forfeit its earlier claim to priority and subject any new patent to intervening prior art.  Gilead followed that precise approved course.  Instead of claiming priority to the '375 patent family, Gilead filed the application that ultimately issued as the '483 patent as a separate family.  In the process, Gilead gave up roughly 10 months of priority.  Consequently, the '483 patent is subject to roughly 10 months of intervening prior art.

Nevertheless, despite sacrificing almost a year of priority, the court contends that Gilead acted improperly by continuing to pursue claims in the application that issued as the '375 patent.  To support this conclusion, the court

holds that in the case of competing patents, a patentee is stuck with the earliest expiration date irrespective of filing or issue dates. Maj. Op. at 13. To justify this new rule, the court relies on the flawed assumption that upon the expiration of a patent, the public obtains an absolute right to use the previously-claimed subject matter. Maj. Op. at 11. I think the issue is more nuanced than the court acknowledges.

To begin with, not even a patentee has the affirmative right to use its claimed subject matter. *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinefabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987); *see also* 35 U.S.C. § 154(a)(1). Thus, when a patent expires, this court cannot assume that such a right (which never existed) transfers to the public. Additionally, the court's assumption ignores the possible existence of overlapping patents. For example, where a first patent claims a genus, upon expiration of that patent, the public may still be excluded from practicing the full scope of the expired claim due to subsequent patents on various species contained within the prior genus claim. Still other legal and regulatory bars may prohibit the public from practicing the claimed subject matter as well. For example, certain claims in the '483 patent refer to methods of treating influenza using a drug compound. Consequently, certain uses of that method are subject to prior approval from the Food and Drug Administration. I believe this demonstrates that upon expiration of a patent, the public does not *necessarily* obtain an unfettered, affirmative right to practice the claims.

At the same time a patentee may not continue to claim the exclusive right to particular subject matter beyond the expiration of its patent. Such a proposition is the antithesis of the quid pro quo of the patent system. Instead, it is more accurate to say that upon expiration of a patent, that particular expired patent is no longer a bar to the public's use of the claimed subject matter. Further,

any subsequent attempts to prolong the initial patent term using obvious variants should not bar the public from practicing the initially claimed subject matter. However, it is important to note that subsequent improvements, if satisfying the criteria for patentability, *could* bar the public from practicing some subject matter encompassed by expired patents. Finally, consistent with our precedent, I would find that efforts to obtain patentably indistinct claims in a patent having common inventorship but owned by a different entity should also not bar the public. These narrow limitations on patentability and validity are consistent with established case law. This case does not compel the court to go any further.

Accordingly, I differ with the court on the effect this court should give to subsequent attempts by a patent owner to seek exclusive rights to obvious variants that do *not* extend the term of its earlier patent. Because this court is not presented with same-invention double patenting, I am aware of no argument that the Patent Act precludes such conduct. And because the patents in this case are subject to a common ownership requirement, that concern provides no basis for complaining of Gilead's conduct. Simply put, the only relevant question is whether this court should extend our case law to encompass this new behavior exhibited by Gilead.

As I began at the outset, I view that question through the lens of judicial restraint. To be sure, condoning Gilead's conduct may lead to some strategizing during prosecution to maximize patent term and obtain varying priority dates to hedge against intervening prior art. But I do not perceive Gilead's conduct as so manifestly unreasonable to warrant a new judicially-created exception to invalidate patents. *Cf. Rutherford*, 442 U.S. at 555 ("[F]ederal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy . . . . Only when a literal construction of a statute yields results so manifest-

ly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied.") (citations omitted).

As a final point, I think a number of concerns counsel for a more restrained approach. Chief among those is the interplay between today's decision and the new "first-inventor-to-file" provision of the Leahy-Smith America Invents Act, Pub. L. No. 112–29 § 3, 125 Stat. 285–86 (2011) ("the AIA"). Under the AIA's new "first-inventor-to-file" framework, prospective patentees are under tremendous pressure to file their applications early. I am concerned that today's opinion will have unforeseen consequences in this new race to the Patent Office.

Accordingly, for the foregoing reasons, I respectfully dissent.